UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
BENISTAR ADMIN SERVICES, LLC, *et al.*,

                              Plaintiffs,

            - against -

**ORDER ADOPTING REPORT AND RECOMMENDATION**
17-CV-4296 (RRM) (AYS)

LANCE H. WALLACH, *et al.*,

                              Defendants.
------------------------------------------------------------------x
ROSLYNN R. MAUSKOPF, United States District Judge.

      On July 27, 2020, Benistar Admin Services, Inc.; its President, Donald J. Trudeau; and one of its officers and employees, Molly Carpenter (collectively, "Plaintiffs") filed a motion for summary judgment with respect to counterclaims filed by the last remaining defendant in this action, Stacey Arenas. (*See* First Motion for Summary Judgment to Dismiss Counterclaim with Prejudice (Doc. No. 128).) Three days later, Plaintiffs filed a letter motion, (Doc. No. 131), seeking to strike a letter filed by Arenas on July 24, 2020 (Doc. No. 130), and to impose sanctions on Arenas for deliberately violating the Court's orders. The Court referred both motions to Magistrate Judge Anne Y. Shields, who, on January 13, 2021, issued a report and recommendation (the "R&R") recommending 1) that Plaintiffs' motion for summary judgment be granted and that Arenas' Counterclaim be dismissed in its entirety and 2) that Plaintiffs' motions to strike Arenas' July 24, 2020, letter and for leave to move for sanctions be denied. Arenas timely filed objections to the R&R, but those objections are general and conclusory. Accordingly, the Court has reviewed the R&R for clear error and, finding none, adopts the R&R in its entirety.

## BACKGROUND

Although familiarity with the procedural history of this action is assumed, the Court will briefly recap those portions of the history relating to Arenas.  In July 2017, Benistar and Trudeau commenced this action by suing Lance H. Wallach, a/k/a Robert Sherman; VEBA, LLC; and Dathonie D. Pinto (the "Original Defendants") for federal trademark infringement; unfair competition under the Lanham Act, 15 U.S.C. § 1051 *et seq.*; cybersquatting under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125 *et seq.*; and state law.  The complaint principally alleged that Wallach and VEBA engaged in a concerted effort to discredit and disrupt Benistar's business by creating, publishing, and perpetuating negative content on the internet via various websites, blogs, and social media.  (Complaint (Doc. No. 1) at ¶ 26.)  As part of this effort, Wallach and VEBA created dozens of domain names that incorporated Benistar's registered marks, which they then used to compete with Benistar and to extort money from Benistar by offering the domain names for sale at inflated prices.  (*Id.*)

In April 2014, Benistar entered into a Services Agreement with Wallach and VEBA in an effort to prevent the disparagement of Benistar's business and the creation of more infringing domain names.  The Services Agreement authorized Wallach and VEBA to hire "Approved Third Party Contractors" to reduce the volume of disparaging information and infringing domain names.  Pinto was one of those contractors.  However, the Original Defendants failed to perform their duties under the Services Agreement, prompting the commencement of this action.  According to the original complaint in this action, Wallach and VEBA not only did not reduce the volume of disparaging information on the internet, but themselves registered over 70 infringing domain names and created 8 websites dedicated to publishing and disseminating

information about Benistar that would prompt Benistar customers to transfer their business to competing entities operated by Wallach and VEBA.  (Compl. at ¶¶ 40-41, 43.)

In July 2018, Plaintiffs filed an amended complaint which named five additional individuals as defendants, including Arenas.  The amended complaint alleged that, pursuant to agreements with Wallach, these five individuals had registered and supported the infringing domain names, posted disparaging information about Benistar on blogs, or published articles with the purpose of damaging Plaintiffs.  (Am. Compl. at ¶ 167.)  However, the pleading did not allege precisely what actions each individual took to damage Plaintiffs or precisely when the acts occurred.

On August 30, 2019, Arenas filed an answer to the amended complaint, in which she asserted the following counterclaim:

> The Plaintiffs have intentionally, recklessly, and negligently brought an action against me to cause mental hardship, harassment, defame my name, cause financial harm and waste my time. Plaintiffs have instituted a frivolous lawsuit against me and are trying to intimidate me and prevent me from coming forth with other illegal matters including Identity Theft, Harassment, Defamation of Name, Face and Character.

(Arenas' Answer (Doc. No. 105) at 7.)

Plaintiffs subsequently moved for summary judgment with respect to Arenas' counterclaim.  Arenas – who, then as now, was proceeding *pro se* – submitted untimely, piecemeal responses to that motion.  Plaintiffs did not request that the untimely responses be disregarded but, in a letter dated July 19, 2020, (Doc. No. 126), requested 1) an extension of time to reply and 2) an order precluding Arenas from serving any further opposition papers on Plaintiffs.  Magistrate Judge Shields granted Plaintiffs' requests in an order dated July 20, 2020, which Plaintiffs' counsel served on Arenas via email that same day.  (Certificate of Service (Doc. No. 127).)

3

On July 24, 2020, Arenas sent a letter to the Court and Plaintiffs' counsel, which attempted to explain why she had sent multiple opposition papers. (Letter (Doc. No. 130).) Perceiving that letter to be a violation of the July 20, 2020, order, Plaintiffs responded by moving to strike that letter and requesting permission to move for sanctions against Arenas. (Letter-Motion dated July 30, 2020 (Doc. No. 131) at 5.) In an electronic order dated August 3, 2020, the Court referred both this Letter-Motion and Plaintiffs' motion for summary judgment to Judge Shields for a report and recommendation.

The R&R

On January 13, 2021, Judge Shields issued her R&R. It liberally construed Arenas' counterclaim as asserting four causes of action: "(1) that the Amended Complaint is frivolous, in violation of Rule 11 of the Federal Rules of Civil Procedure; (2) intentional infliction of emotional distress; (3) defamation; and (4) identity theft." (R&R at 6.) With respect to the first cause of action, Judge Shields found that Arenas offered "no factual support for her contention that the claims as alleged against her are frivolous." (R&R at 7.) The magistrate judge also found, based on her own review of the amended complaint and the papers offered in support of, and in opposition to, Plaintiffs' motion for summary judgment, that the amended complaint was "not frivolous, under the standard set forth in Rule 11." (R&R at 7.)

The R&R also concluded that the counterclaim failed to state any of the three state-law claims. First, it held that the counterclaim did not suggest the sort of "extreme and outrageous conduct" necessary to state a claim for intentional infliction of emotional distress, and did not allege that Arenas suffered emotional distress as a result of the conduct. (R&R at 8.) Second, the R&R held that Arenas' counterclaim – which did not allege the "defamatory statements purported to have been made by Plaintiffs, the approximate date they were made, [or] … if

anyone in particular made a statement specifically concerning her" – were too conclusory to state a claim for defamation. (R&R at 9.) The R&R also noted that any claims arising from allegedly defamatory statements made in the course of this litigation were "barred by the New York State doctrine of absolute privilege." (*Id.*) Third, the R&R held that the claim for identity theft was implausible. The R&R noted that identity theft is a crime which does not give rise to a civil cause of action and that New York law does not recognize invasion of privacy claims, except those involving the unconsented use of a living person's name, portrait, or picture for advertising or commercial purposes.

Although Judge Shields recommended that the Court grant Plaintiffs' motion for summary judgment and dismiss Arenas' counterclaim, she recommended that the Court deny Plaintiffs' other motions. First, Judge Shields noted that she "did not review or rely upon" Arenas' July 24, 2020, letter in connection with the R&R. (R&R at 12.) Second, she opined that it would be "draconian" to permit Plaintiffs to move for sanctions in connection with the "unauthorized filing of a sur-reply by a *pro se* litigant." (*Id.*)

Arenas' Opposition

Arenas timely objected to the R&R in a four-page document dated February 26, 2021 (the "Objections"). (Objections to R&R (Doc. No. 143).) However, that document does not object to specific findings or conclusions in the R&R. Indeed, it does not mention the R&R at all. Rather, it contains conclusory statements, accusations that statements contained in affidavits filed in support of Plaintiffs' motion for summary judgment are perjured or contradictory, and allusions to arguments that are not suggested by Arenas' counterclaim.

In the first paragraph of the Objections, Arenas acknowledges that Judge Shields did not consider her July 24, 2020, submission. Arenas does not argue that this decision was incorrect,

5

but urges the Court to " consider this letter, which includes evidence pertinent to this case that wasn't included." (Objections at ¶ 1.)

The second paragraph of the Objections consists of an introductory paragraph and ten subparagraphs, designated (a) through (j). In the introductory paragraph, Arenas disparages Plaintiffs' claims against her in conclusory terms, stating, among other things, that they are frivolous, malicious, without merit, unreasonable, and brought in bad faith "for the wrong reason, an unacceptable and illegal reason." In subparagraph (b), Arenas implies that the reason Plaintiffs sued her was because "they couldn't delete disparaging information on their own without [her] knowledge." In subparagraph (i) and in the third paragraph of the Objections, Arenas baldly alleges: "Plaintiffs['] attorney violated Rule 11. Sanctions should be imposed and he should not be granted summary judgment."

Elsewhere in the second paragraph, Arenas asserts that she has been defamed. Subparagraph (e) makes it clear that at least some of the defamatory remarks were in the amended complaint, asserting that Plaintiffs "falsely accused me of committing many illegal acts in their complaint, knowing I did not commit any of them." Similarly, subparagraph (d) alleges that "Plaintiff and his attorney are trying to make me out to be an unethical person, an 'Extortionist' as they call me." The Objections do not identify specific instances of defamation that took place outside the context of this litigation.

The Objections also allege other improprieties on the part of Plaintiffs and their attorneys. Subparagraph (c) alleges that Trudeau's declaration in support of the motion for summary judgment was false and contradictory in various respects. And subparagraph (f) states: "Plaintiff and their lawyers committed perjury throughout this case thus far. Their declarations contain lies, false accusations and information."

Other subparagraphs allude to causes of action that were never suggested by the language of Arenas' counterclaim.  Subparagraph (d) implies that Arenas' "constitutional rights" and "14th Amendment" rights were violated in some unspecified way.  Subparagraph (g) alleges that "Plaintiff and Attorney" violated Arenas' "due process and Sixth Amendment right[s]" by creating "so much paperwork intentionally" that she is unable to defend herself.  Subparagraph (a) asserts that an unspecified plaintiff and "his staff" hacked her LinkedIn account, and subparagraph (h) alleges, without further elaboration, that "Plaintiff and staff violated the Computer Fraud and Abuse Act."  Finally, subparagraph (j) simply states that "[i]ntentional wrongdoing is illegal," without providing any clues as to the nature of the illegality involved.

In the fourth and final paragraph of the Objections, Arenas requests permission to amend her counterclaim.  (Objections at ¶ 4.)  Arenas implies that she wants to add the claims described in the preceding paragraph, stating: "My counterclaim needs to be amended and include all claims that were not included originally, some stated above."  (*Id.*)  However, she also alludes to unspecified "new revelations" that have "come about in this case" since her counterclaim was written, including allegations involving fraud.  (*Id.*)

## STANDARD OF REVIEW

The procedures relating to filing and adjudicating objections to a report and recommendation are set forth in 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure.  The statute provides that within fourteen days after being served with a copy of a report and recommendation, "any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court."  28 U.S.C. § 636(b)(1)(C).  A district judge then makes "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  *Id.*  The judge "may accept,

7

reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge," or "may receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

Rule 72 essentially tracks the language of its statutory analogue but provides that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file *specific* written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2) (emphasis added). "The rule adds that the objections must be 'specific' so as to conform to the statute's requirement that the judge review those portions of the proposed findings or recommendations to which objection is made; failure to make appropriately specific objections excuses the district judge from doing a de novo review." 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Fed. Practice & Procedure*, Civ. § 3070.1 (3d ed.). If "the [objecting] party makes only frivolous, conclusory or general objections, or simply reiterates [his] original arguments, the Court reviews the report and recommendation only for clear error." *Kamden-Ouaffo v. Balchem Corp.*, No. 17-CV-2810 (PMH), 2021 WL 1101126, at *2 (S.D.N.Y. Mar. 23, 2021) (quoting *Velez v. DNF Assocs., LLC*, No. 19-CV-11138 (GHW) (SDA), 2020 WL 6946513, at *2 (S.D.N.Y. Nov. 25, 2020) (alterations in *Kamden-Ouaffo*).

*Pro se* litigants are to be "afforded extra leeway in meeting the procedural rules governing litigation, and trial judges must make some effort to protect a party so appearing from waiving a right … because of his or her lack of legal knowledge." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). "To give such 'extra leeway,' courts are, for example, to construe a *pro se* litigant's pleadings and motions liberally, … and to allow amendments to a *pro se* litigant's pleadings more freely …." *In re Sims*, 534 F.3d 117, 133 (2d Cir. 2008) (internal citations omitted). However, "[t]he right of self-representation is not a license … not to

8

comply with relevant rules of procedural and substantive law." *Faretta v. California*, 422 U.S. 806, 834 n. 46 (1975); *see also Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (right to self-representation "does not exempt a party from compliance with relevant rules of procedural and substantive law").

## DISCUSSION

Even when construed liberally, Arenas' Objections are conclusory and general. Accordingly, the Court need only review the R&R for clear error. As discussed below, the Court finds that the R&R is not clearly erroneous in any respect. Indeed, even if the Court were to conduct de novo review of those portions of the R&R to which Arenas has made general and conclusory objections, the Court would accept Judge Shields' findings and recommendations in their entirety.

Preliminarily, to the extent that Arenas is objecting to Judge Shields' decision to disregard her July 24, 2020, submission, the Court finds that decision to be entirely correct. In her July 20, 2020, order, Judge Shield expressly directed Arenas not to serve any further papers on Plaintiffs in opposition to Plaintiffs' motion to dismiss. Arenas disregarded that order by filing the letter dated July 24, 2020. Regardless of Arenas' *pro se* status, this deliberate failure to comply with Judge Shields' order cannot be countenanced.

Arenas' objections to Judge Shields' ruling regarding the Rule 11 claim are not only without merit, but lend support to the magistrate judge's ruling. As Judge Shield correctly noted, "Rule 11 does not create an independent cause of action." *Sean Michael Edwards Design, Inc. v. Pyramid Designs*, No. 98-CV-3700 (BSJ), 1999 WL 1018072, at *1 (S.D.N.Y. Nov. 9, 1999) (citing *Port Drum Co. v. Umphrey*, 852 F.2d 148, 150–51 (5th Cir. 1988)); *see also Wentworth v. Hedson*, 248 F.R.D. 123, 125 (E.D.N.Y. 2008) ("There is no private right of action under Rule

9

11"). Rather, Rule 11 permits a court to "impose an appropriate sanction on any attorney, law firm, or party" who either violates Rule 11(b) him or herself or is responsible for the violation. Fed. R. Civ. P. 11(c). Rule 11(b) is violated when, among other things, a complaint is "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," Fed. R. Civ. P. 11(b)(1), or when factual contentions in the pleading lack evidentiary support. Fed. R. Civ. P. 11(b)(1).

Arenas' Objections tacitly concede that Plaintiffs' claims have a sound basis. She claims that Plaintiffs sued her because "they couldn't delete disparaging information on their own without [her] knowledge." (Objections at ¶ 2(b)). This statement implies that there was indeed "disparaging information" about Benistar on Arenas' LinkedIn page, and that Plaintiffs elected to sue her because they had been unsuccessful in removing that disparaging information through other means. Accordingly, Arenas' Objections only serve to substantiate Judge Shields' conclusion that Plaintiffs did not violate Rule 11 by suing Arenas.

Similarly, Arenas' Objections substantiate Judge Shields' finding that Plaintiffs' allegedly defamatory statements about Arenas were absolutely privileged. "New York State law's 'litigation privilege' provides that '[s]tatements made by parties, attorneys, and witnesses in the course of a judicial or quasi-judicial proceeding are absolutely privileged, notwithstanding the motive with which they are made, so long as they are material and pertinent to the issue to be resolved in the proceeding.'" *Officemax Inc. v. Cinotti*, 966 F. Supp. 2d 74, 79 (E.D.N.Y. 2013) (quoting *Bisogno v. Borsa*, 101 A.D.3d 780, 781 (N.Y. App. Div. 2012)). In her Objections, Arenas concedes that at least some of the defamatory remarks were made in the course of this litigation, asserting that Plaintiffs "falsely accused me of committing many illegal acts in their complaint, knowing I did not commit any of them," (Objections at ¶ 2(e)), and that "Plaintiff and

10

his attorney are trying to make me out to be an unethical person, an 'Extortionist' …." (Objections at ¶ 2(d)). Arenas does not argue that these alleged defamatory remarks were not material and pertinent to issues to be resolved this case, and does not identify specific instances of defamation that took place outside the context of this litigation. Accordingly, the Court finds that Judge Shields was entirely correct in holding that Arenas' counterclaim did not state a plausible claim of defamation.

Arenas does not raise any objections to Judge Shields' findings or conclusions relating to the intentional infliction of emotional distress or identity theft claims. Nonetheless, the Court has reviewed those findings and conclusions for clear error. Finding none, the Court adopts the R&R in its entirety.

Arenas' Request to Amend the Counterclaim

In addition to raising the aforementioned objections to the R&R, Arenas requests permission to amend her counterclaim. (Objections at ¶ 4.) Ordinarily, a court should freely grant a party leave to amend its pleadings "when justice so requires." *See* Fed. R. Civ. P. 15(a). And, as noted above, a court should allow amendments to a *pro se* litigant's pleadings even "more freely." *In re Sims*, 534 F.3d at 133. However, while "a *pro se* plaintiff should be 'grant[ed] leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated,' *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks omitted), 'a futile request to replead should be denied. *Id.*" *Cousar v. New York-Presbyterian Queens*, No. 19-CV-3092, 2021 WL 627503 (2d Cir. Feb. 18, 2021) (summary order).

In this case, it is unclear what claims Arenas wants to include in her amended counterclaim. Yet, it is clear that it would be futile to raise the claims suggested by the

11

Objections. First, the proposed constitutional claims – those alleging violations of the Sixth Amendment, the Fourteenth Amendment, the due process clause, and unspecified "constitutional rights" – are flawed "because the [counterclaim] defendants are private entities, and the Constitution protects citizens only against intrusion by the Government." *Idema v. Wager*, 120 F. Supp. 2d 361, 364 (S.D.N.Y. 2000), *aff'd*, 29 F. App'x 676 (2d Cir. 2002). Second, while the Consumer Fraud and Abuse Act ("CFAA") "creates a private cause of action in certain narrowly defined circumstances," *Univ. Sports Pub. Co. v. Playmakers Media Co.*, 725 F. Supp. 2d 378, 382 (S.D.N.Y. 2010), this case does not present one of those circumstances. In order to bring suit under the CFAA, "a private plaintiff must prove that the defendant violated one of the provisions of [18 U.S.C.] § 1030(a)(1)-(7)." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1131 (9th Cir. 2009). The act of hacking into a person's LinkedIn account for the purpose of deleting allegedly defamatory material does not violate these provisions. In addition, "[a] civil action for a violation of [the CFAA] may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of [18 U.S.C. § 1030](c)(4)(A)(i)." 18 U.S.C. § 1030(g). The conduct alleged by Arenas does not involve any of these factors. Third, Arenas' allegations of "intentional wrongdoing" and "fraud" are far too vague to state a claim. Accordingly, the Court concludes that it would be futile to grant Arenas leave to amend her counterclaim. To the extent that her Objections incorporate a motion for leave to amend the counterclaim, that motion is denied.

## CONCLUSION

For the reasons stated above, the Court accepts the recommendations set forth in Magistrate Judge Shields' R&R. Plaintiffs' motion for summary judgment is granted and Defendant Arenas' counterclaim is dismissed in its entirety. The Court denies Plaintiffs' motion to strike Arenas' July 24, 2020, letter but disregards that letter as an unauthorized sur-reply. The

Court also denies Plaintiffs' motion that sanctions be imposed on the *pro se* defendant, Arenas. Plaintiffs are directed to serve a copy of this Order on defendant Arenas and file proof of service with the Clerk of Court forthwith.

SO ORDERED.

Dated: Brooklyn, New York
March 29, 2021

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge